```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
                  05-CV-11(JMR/RLE)
```

James Noyer                        )
                                   )
        v.                         )      ORDER
                                   )
Terry Carlson et al.               )


Plaintiff is suing three Minnesota correctional officials under 42 U.S.C. § 1983 and Minnesota law. Defendants move to dismiss, or in the alternative for summary judgment. For the following reasons, defendants' motion for summary judgment is granted.

I. Background

The procedural history of this case is complex. The Court has taken the facts in the light most favorable to plaintiff.

Plaintiff served several years' confinement for a 1995 sex offense conviction. In 2000, he was released under Minnesota's intensive supervised release program. The following year, he was convicted of possessing child pornography, a crime which also subjected him to penalties for violating the terms and conditions of his supervised release. He was returned to Minnesota's Moose Lake correctional facility to serve time on both the child pornography conviction, and the supervised release violation.

Plaintiff claims defendants detained him at Moose Lake beyond the termination of his sentence. The case is complicated by a fundamental dispute over the exact date when plaintiff's sentence

was to expire.  Plaintiff offers evidence showing he was to be released on March 6, 2004.  (Hager Aff. Ex. C.)  Defendants reply that plaintiff's supervised release sentence would not have expired until February 18, 2008.  (Peterson Aff. ¶ 8 and Exs. C, D, E.)  If defendants are correct, plaintiff was lawfully subject to detention for the entire period at issue, and his claims must fail.  But because the facts are taken in the light most favorable to plaintiff, the Court will assume he was to be released on March 6, 2004.[1]

On February 6, 2004, only days before plaintiff's release date, Hennepin County filed a petition seeking to have him civilly committed under Minnesota Statute § 253B.185 (2002), also known as the "SDP/SPP" Act.[2]  Hennepin County's petition sought a court order "to transport [plaintiff] to, and hold [him] at, a locked treatment facility upon his release from [the] Minnesota Correctional Facility where [he] is incarcerated at the time of his release, which is anticipated to be March 6, 2004."  (Petition, Hager Aff. Ex. B.)

---

[1]Each side extensively argues whether March 6, 2004, was a "supervised release date," which plaintiff claims supports a protected liberty interest, or is merely a "projected release date," which defendants claim creates no liberty interest at all. Such a factual dispute is presently unsuitable for summary disposition. Therefore, the Court assumes March 6, 2004, was plaintiff's "supervised release date" or "expiration date."

[2]The abbreviation "SPP" stands for "Sexual Psychopathic Personalities," and "SDP" stands for "Sexually Dangerous Persons." Minn. Stat. § 253B.185, subd. 1.

2

On February 10, 2004, the petition came before Hennepin County District Judge Patricia Belois. Judge Belois issued a Notice and Order for Custody, Examination, and Hearing (the "First Order"). The First Order stated, in relevant part:

> 1. Immediately upon [plaintiff's] parole from incarceration by the Minnesota Commissioner of Corrections, he shall be taken into custody and transported to the Minnesota Security Hospital where he shall be held for observation, evaluation, diagnosis, care, treatment and, if necessary, confinement pending further order of this Court. The Court is informed that at this time Respondent is expected to be paroled from the Minnesota Correctional Facility - Moose Lake on March 6, 2004.
>
> 2. Upon [plaintiff's] parole by the Commissioner of Corrections, the Hennepin County Sheriff, or his designee, shall take [plaintiff] into custody and deliver him to the Head of the Minnesota Security Hospital unless [plaintiff] is already there.

(First Order, Hager Aff. Ex. B.) On February 27, 2004, Judge Belois issued a First Pre-Trial Order and Order for Transportation and Temporary Confinement (the "Second Order"). In the Second Order, Judge Belois said plaintiff "is scheduled to be released from the Minnesota Correctional Facility at Moose Lake on March 6, 2004 and will be transported to the Minnesota Sex Offender Treatment Program," pursuant to the First Order. (Second Order, ¶ 2, Hager Aff. Ex. B.) The Second Order set a May 3, 2004, trial date, and scheduled a March 10, 2004, preliminary hearing to determine whether plaintiff "may be held in a treatment facility pending trial." (Id. ¶¶ 1, 2.) A copy of the Second Order was

mailed to plaintiff and the Hennepin County Attorney.

On March 3, 2004, plaintiff waived the preliminary hearing and consented to the issuance of a "hold order," to "requir[e] [him] to remain in the hospital" until the trial date. (Waiver, Hager Aff. Ex. B.)

Bureaucracy intervened, however. Before plaintiff could be released to the Sex Offender Program, Minnesota's Department of Corrections changed its procedures. On March 1, 2004, defendant Peterson issued a memorandum requiring that inmates' release dates be extended upon filing of a civil commitment petition. So, on March 3, 2004, the very day plaintiff agreed to be placed immediately in the Sex Offender Program, a corrections employee (not named as a defendant in this action) extended plaintiff's release date 90 days contingent on the outcome of the Hennepin County civil commitment proceedings.

On March 5, 2004, the Assistant Hennepin County Attorney handling the civil commitment proceeding wrote to Judge Belois explaining that:

> [B]ased on the pendency of this civil commitment matter, the Department of Corrections has decided to extend Mr. Noyer's release date until 90 days after March 3, 2004 . . . . If the commitment matter were to be resolved in Mr. Noyer's favor earlier than that date, his release date might be moved up. If a commitment order is not issued by the new release date, then it appears that DOC will review the matter further.
>
> It seems to me that this will obviate the need for the court to act on Mr. Noyer's hold order before the commitment trial which begins on May 3. In addition, any

4

>   transportation for Mr. Noyer will have to be arranged from the prison at Moose Lake, rather than [the Sex Offender Program].

(March 5 Letter, Hager Aff. Ex. B.) A copy of this letter was sent to plaintiff's counsel in the civil commitment matter.

March 6, 2004, came and went. Plaintiff remained at Moose Lake.

On March 9, the day before the scheduled hearing on the hold order, the Assistant Hennepin County Attorney again wrote to Judge Belois advising that he had spoken with plaintiff's counsel, and that the parties agreed there was no need for a hearing:

>   [Plaintiff's counsel] has filed a waiver on behalf of Mr. Noyer agreeing to continue the court's hold order until the time of trial. In addition, as you are aware, the Department of Corrections has extended Mr. Noyer's incarceration until June 1. Each of these two actions independently obviates the need for a court hold order hearing at this time.

(March 9 Letter, Hager Aff. Ex. B.) This letter was also copied to plaintiff's counsel.

On March 10, 2004, Judge Belois signed an Order for Transportation and Temporary Confinement (the "Third Order"). This Order incorrectly stated that plaintiff was confined in the Sex Offender Program, and ordered that plaintiff "shall be confined at the Hennepin County Adult Detention Facility for no more than 24 hours before 10:30 a.m. on May 3, 2004[,]" the date of the civil commitment hearing. (Third Order, Hager Aff. Ex. B.)

On March 16, 2004, two writs of habeas corpus ad prosequendum

were directed to defendant Fabian ordering that plaintiff be delivered to the Hennepin County Sheriff on March 25 and May 3, respectively, for court appearances in the civil commitment proceedings. (Writs, Hager Aff. Ex. B.)

On March 23, 2004, upon finding that his client was still at Moose Lake, plaintiff's attorney filed a Carlton County, Minnesota, petition seeking a writ of habeas corpus. The petition claimed plaintiff's continued detention by the corrections department violated the law.[3] (Varco Aff. Ex. A.) Plaintiff's petition referenced Judge Belois' Orders, and noted that he and the Department of Corrections were in disagreement "about whether [he] was serving so called expiration or not with March 6, 2004 being his release date." (Id.) Plaintiff requested "immediate release to the custody of the Hennepin County Sheriff who will transport him to the Minnesota Security Hospital where he shall await the pendency of his commitment proceeding in the Hennepin County District Court." (Id.)

---

[3]The petition referenced the criteria of the SDP/SPP Act, which provides that a patient pending civil commitment may be "temporarily confined in a jail or lockup but only if: (1) there is no other feasible place of confinement for the patient within a reasonable distance; (2) the confinement is for less than 24 hours or, if during a hearing, less than 24 hours prior to the commencement and after the conclusion of the hearing; and (3) there are protections in place, including segregation of the patient, to ensure the safety of the patient." Minn. Stat. § 253B.185 subd. 1a (2004). The petition also referenced, without citation or analysis, the Civil Commitment Act and the Minnesota Patient's Bill of Rights. (Petition at 2-3.)

6

Nothing happened. Plaintiff remained in custody at Moose Lake, and the record reflects neither court action nor a decision on his habeas petition prior to the Hennepin County commitment hearing. On May 3, 2004, after a hearing on the merits of the commitment petition, the Hennepin County District Court issued a warrant for plaintiff's civil commitment to the Minnesota Sex Offender Program. On May 6, plaintiff was released to Hennepin County custody. On September 1, plaintiff's counsel voluntarily dismissed the Carlton County habeas petition as moot. (Varco Aff. Ex. B.)

Plaintiff's present § 1983 action was filed in January, 2005. He claims his detention at Moose Lake – between March 6 and May 6, 2004, violated his Fourth, Eighth, and Fourteenth Amendment rights. He seeks damages from the three defendants: Terry Carlson, the Warden of Moose Lake; Jeffrey Peterson, the Executive Officer of the Hearings and Release Unit of the Department of Corrections; and Joan Fabian, Minnesota's Commissioner of Corrections.

II. <u>Analysis</u>

   A. <u>Summary Judgment</u>

In deciding this matter, the Court has considered matters outside the pleadings. As such, the case is treated as being one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the

nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Anderson, 477 U.S. at 248-49; see also Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis omitted). If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

    B.  Official Capacity Claims are Barred

Plaintiff has brought his claims against defendants in their official capacity. He may not do so. Suits against defendants in their official capacity are barred by the Eleventh Amendment, and in any event, are not cognizable under 42 U.S.C. § 1983. This is because, "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." Kentucky v. Graham, 473 U.S. 159, 169

8

(1985). This includes suits against state officials in their official capacity, which are construed as suits against the state. Id. at 166. Because Eleventh Amendment immunity in Section 1983 actions has been neither abrogated by Congress nor waived by the Minnesota legislature, plaintiff's claims are barred.

Beyond this, in suits for damages, neither a state nor a state official in his or her official capacity, is considered a "person" within the meaning of 42 U.S.C. § 1983. Will v. Michigan Dep't of Police, 491 U.S. 58, 64, 71 (1989). As a result, plaintiff's federal claims against defendants in their official capacity are dismissed.

Plaintiff also alleges violations of the Minnesota Constitution, statutes, and decisional law. Compl. ¶¶ 12, 14. Such claims are not cognizable in this Court. The Eleventh Amendment bars this Court from taking supplemental jurisdiction of state law claims against state officials. O'Connor v. Jones, 946 F.2d 1395, 1397-98 (8th Cir. 1991); Treleven v. Univ. of Minnesota, 73 F.3d 816, 819 (8th Cir. 1996).

For these reasons, each of plaintiff's official capacity claims must be dismissed.

C. Individual Capacities: Qualified Immunity

This leaves plaintiff's claims against defendants Carlson, Peterson, and Fabian in their individual capacities.

Each seeks qualified immunity. Government officials are

generally entitled to qualified immunity from § 1983 liability when performing discretionary functions, unless they violate clearly established law. Beck v. Wilson, 377 F.3d 884, 889 (8th Cir. 2004), citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The existence of qualified immunity is a question of law for the court. Hunter v. Bryant, 502 U.S. 224, 228 (1991).

When a defendant asserts qualified immunity, the court performs two inquiries in proper sequence. Coleman v. Parkman, 349 F.3d 534, 537-38 (8th Cir. 2003), citing Saucier v. Katz, 533 U.S. 194, 200 (2001). It first considers whether the facts alleged, viewed in the light most favorable to plaintiff, show the official's conduct violated a constitutional right. Coleman, 349 F.3d at 538. If so, the court secondarily considers whether that right was "clearly established." Id. The second question focuses on the particular case's specific context, rather than as a broad general proposition. Id. The court must consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

It is well established that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Davis v. Hall, 375 F.3d 703, 711-712 (8th Cir. 2004) (internal citation omitted). In other words, officials "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Id. at 712.

Plaintiff claims defendants violated his constitutional rights when they failed to transfer him from Moose Lake to the Sex Offender Program on March 6, 2004. The Court considers first whether plaintiff had a constitutional right to be so transferred.

### 1. Constitutional Violation

Plaintiff's claim potentially implicates two distinct liberty interests. First among these are the due process rights associated with his civil commitment. Vitek v. Jones, 445 U.S. 480, 493 (1980). The March 3, 2004, waiver plaintiff signed was addressed to his civil commitment due process rights. He does not challenge his civil commitment, and alleges no due process violations relating to that proceeding.

He does, however, allege a violation of the second liberty interest -- being free from wrongful, prolonged incarceration. Davis, 375 F.3d at 717. He alleges this interest was infringed by his continued incarceration at Moose Lake. The Fourteenth Amendment recognizes the right to be free from wrongful incarceration, especially where state officials continue to hold an individual after a court order for release. See id.; see also Young v. City of Little Rock, 249 F.3d 730, 736 (8th Cir. 2001) and Slone v. Herman, 983 F.2d 107, 109 (8th Cir. 1993). One who is detained despite a clear, unequivocal court order commanding his release, can establish a constitutional violation. See, e.g., Davis, 375 F.3d at 707, 716 (finding constitutional violation where

11

officials failed to comply with order that stated, "Defendant is to be discharged from custody immediately").

Plaintiff's problem, however, is that none of Judge Belois' Orders rise to this level; they neither address plaintiff's release from custody nor demand his immediate transport. The First Order directs the Hennepin County Sheriff to assume custody over plaintiff upon the occurrence of a condition precedent -- that is, "upon his parole by the Commissioner of Corrections" -- and to transport him to the hospital "unless he is already there." (First Order, ¶ 2.) The Second Order acknowledges that plaintiff "is scheduled to be released . . . on March 6, 2004 and will be transported" to the hospital pursuant to the First Order. (Second Order, ¶ 2.) The Third Order incorrectly states that plaintiff was being held at the hospital, and purports to arrange for future transportation to the Hennepin County District Court hearings.

These Orders are either equivocal or conditional. To the extent they may be construed as giving plaintiff a right to be transported to the Sex Offender Program, that right is explicitly conditioned "upon his parole by the Commissioner of Corrections," which did not occur until May 6, 2004. The Orders create no liberty interest for plaintiff, if they create any at all, prior to that date.

The extension of plaintiff's incarceration by 90 days is another matter. A prisoner clearly has a liberty interest in

release from custody when his confinement term expires. See Carrillo v. Fabian, 701 N.W.2d 763, 772 (Minn. 2005); Wolff v. McDonnell, 418 U.S. 539, 557 (1974); Davis, 375 F.3d at 717. This interest gives rise to the requirement for a due process hearing, prior to extension of an inmate's term -- for example, the loss of "good time" credits. Wolff, 418 U.S. at 557; Hrbek v. Nix, 12 F.3d 777, 780 (8th Cir. 1993).

According to the Minnesota Supreme Court, Minnesota's "sentences presumptively consist of a specified minimum term of imprisonment equal to two-thirds of the executed sentence and a specified maximum term of supervised release equal to one-third of the executed sentence." Carillo, 701 N.W.2d at 771, citing Minn. Stat. § 244.101, subd. 1 (2004). By statute, the minimum term of imprisonment "may be extended only if the inmate commits a disciplinary offense." Id., citing Minn. Stat. §§ 244.101, subd. 2 and 244.05, subd, 1(b).

The Minnesota Supreme Court found in Minnesota's sentencing scheme "an even stronger liberty interest" than Wolff's when it found due process implications in a prison's decision to extend an inmate's supervised release date by as little as seven days. Id. at 772. From this, it follows that the Department of Corrections' decision to extend plaintiff's release date by 90 days implicated plaintiff's Fourteenth

13

Amendment[4] right to due process.

Defendants reply by citing State ex rel. Johnson v. Fabian, No. A05-88, 2005 WL 704302 (Minn. Ct. App. March 29, 2005) (unpublished) for the proposition that plaintiff had no liberty interest in his release date. (Def. Mem. at 13.) The Court does not agree. In Johnson, an inmate who had been found unsuitable for post-release housing was transferred to a county jail when his supervised release term was to have begun. The inmate claimed his transfer amounted to a denial of supervised release and an extension of his prison term. The Court of Appeals rejected that argument, holding that the jail was "temporary confinement [that] did not constitute a continuation of Johnson's prison term or a denial of supervised release." Johnson, at 3. The Court concluded:

> Johnson's argument that he was denied due process by the DOC's failure to honor his supervised release date . . . is without merit. Johnson *was* released on March 16, 2004 from prison. His supervised release date was honored because he left the North Dakota prison, and, although the DOC immediately transported him to the Polk County Jail, this was not to continue Johnson's incarceration but to implement the ISR [intensive supervised release] conditions in the absence of an alternative placement.

---

[4]Plaintiff does not separately argue his Fourth Amendment claim, and the Court finds no basis to support such a claim. Plaintiff's Eighth Amendment claim also lacks support. Assuming the Eighth Circuit Court of Appeals would recognize an Eighth Amendment claim arising from overdetention, see Davis, 375 F.3d at 714, plaintiff would still need to establish that defendants acted with deliberate indifference to his constitutional rights. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Plaintiff has alleged no facts suggesting that defendants' conduct rose to this level.

14

Id.  This reasoning tends to support, rather than undermine, plaintiff's assertion of a liberty interest in his supervised release date.

Nor are plaintiff's claims barred by the "favorable termination rule" as defendants allege.  "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[.]"  Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

> [I]f it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated [for example, reversed on direct appeal].  But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . .

Id. at 487.

Here, because the challenged incarceration occurred after plaintiff was due to be released, a finding in plaintiff's favor raises no questions as to the validity of plaintiff's conviction. Plaintiff need not show that the underlying criminal proceedings terminated in his favor.

Plaintiff was entitled to due process before defendants extended his sentence.  The Court must consider what process is due.  Reported cases on this issue, such as Carillo, Wolff and Hrbek, typically involve an extension of sentence due to a disciplinary violation.  See Carillo, 701 N.W.2d at 767; Wolff, 418

15

U.S. at 564-66; Hrbek, 12 F.3d at 779.  When prison discipline may result in loss of good time credits, an inmate is entitled:

> (1) to advance written notice of the claimed violation at least 24 hours before the disciplinary hearing; (2) to call witnesses and to present documentary evidence in his defense if doing so will not jeopardize institutional safety or correctional goals; and (3) to receive a written statement from an impartial decisionmaker identifying the evidence relied on and the reasons for the disciplinary action.

Hrbek, 12 F.3d at 780.

Plaintiff argues he was entitled to these rights.  But this is not a prison discipline case.  The Department of Corrections extended plaintiff's release date because he was the subject of a civil commitment hearing -- a fact which has never been in dispute.  Clearly, factfinding was not the issue.

Plaintiff was indeed entitled to challenge the need for continued imprisonment.  He could have done so at the initial hearing on the "hold order," see In re Civil Commitment of Boyd, No. A05-1530, 2006 WL 44356, *3 (Minn. Ct. App. Jan. 10, 2006) (unpublished), but chose to waive that hearing.  He attempted to do so again in his habeas corpus petition, which was ultimately dismissed without a hearing.

On these facts, the Court concludes that plaintiff received all process due under the Fourteenth Amendment.  Defendants' continued detention of plaintiff pending his civil commitment hearing did not violate his due process rights under the Fourteenth Amendment.

### 2. Interest Not Clearly Established

Moreover, the asserted rights were not clearly established as of March, 2004. As of that time, no Minnesota or federal court had held that a prisoner had a protected liberty interest in a supervised release date; <u>Carillo</u> was not decided until 2005. Pre-commitment confinement under Minnesota's SPP/SDP statute was (and remains) legal and constitutional. <u>See</u> <u>Linehan v. Milczark</u>, 315 F.3d 920, 927-28 (8th Cir. 2003); <u>Bailey v. Gardebring</u>, 940 F.2d 1150, 1153 (8th Cir. 1991).

No federal or Minnesota court had ever considered the constitutionality of extending a release date pending a civil commitment. In fact, this appears to be an issue of first impression before this Court. Plaintiff's counsel, the Assistant Hennepin County Attorney handling the case, and Judge Belois all knew plaintiff was being detained at Moose Lake instead of the Sex Offender Program; with the exception of plaintiff's Carlton County habeas petition, no constitutional concerns were ever raised.

Considering all these factors, the Court finds that no reasonable corrections official would have known that keeping plaintiff at Moose Lake pending his civil commitment would be in violation of plaintiff's due process rights under the Fourteenth Amendment. Defendants are therefore entitled to qualified immunity.

17

III. <u>Conclusion</u>

For the foregoing reasons, defendants' motion for summary judgment is granted on the federal claims. The Court in its discretion declines to exercise supplemental jurisdiction over plaintiff's state law claims. 28 U.S.C. § 1367(c)(3).

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 22, 2006

s/ JAMES M. ROSENBAUM
JAMES M. ROSENBAUM
United States Chief District Judge
